**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| vs. | **Case No: 14-03106-21-CR-S-MDH** |
| **DAVID L. MILLER,** | |
| Defendant. | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through Thomas M. Larson, Acting United States Attorney for the Western District of Missouri, and undersigned counsel, respectfully submits this sentencing memorandum in the above-captioned matter. For the reasons set forth below, the Government recommends that this Court sentence the defendant, David L. Miller, to a term of incarceration of no less than 120 months for Count 1 as well as to an appropriate term of supervised release.

## I. BACKGROUND

The defendant, on March 3, 2016, pled guilty, without a written plea agreement, to Count 1 of the Second Superseding Indictment charging him with Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A). On March 17, 2017, the final Presentence Investigation Report (PSR) was filed, indicating that the defendant's base offense level, after acceptance of responsibility, for Count 1 was 37, with a criminal history category of VI. (PSR ¶ 99). The defendant's presentence investigative report indicated that his sentencing range was 360 months to life. (PSR ¶ 100). There is a statutory minimum sentence in this case

for Count 1 of twenty years.  (PSR ¶ 98).  The government has no objections to the presentence report.

## II.  <u>LEGAL STANDARD</u>

Although the Sentencing Guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220 (2005), sentencing still begins with a properly calculated advisory Sentencing Guidelines range.  *See Gall v. United States*, 128 S. Ct. 586, 596 (2007); *Rita v. United States*, 127 S. Ct. 2456, 2464-65 (2007); *Booker*, 543 U.S. at 245-46; *United States v. Plaza*, 471 F.3d 928, 930 (8th Cir. 2006).  Next, the Court must decide if a traditional departure under the Guidelines is appropriate, thus creating an advisory Guidelines sentencing range.  *Plaza*, 471 F.3d at 930.  After calculating the advisory Guidelines range, the Court considers that range, along with all the factors listed in 18 U.S.C. § 3553(a), in arriving at the final sentence.  *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007); *Plaza*, 471 F.3d at 930.

The government filed no objections to the PSR.  The defendant has filed an objection to the two level enhancement for possession of a firearm by a co-conspirator in the case.  (PSR ¶ 49).  Neither the Government, nor the defendant, anticipated that the firearm enhancement would apply in the case.  The Government would add nothing move to the argument than what has already been provided by the Probation Office in the Addendum to the PSR.  If the Court sustains the defendant's objection, the defendant's total offense level would be 35, and his advisory guideline range would be 292 to 365 months, which is what the parties contemplated when the plea agreement was negotiated.

## III.  DISCUSSION

### A.      Statutory and Guidelines Calculations

The defendant's presentence investigative report indicated that his sentencing range for

Counts 1 is 360 months to life.  There is a statutory minimum in this case for Count 1 of twenty

years.  The Government concurs with these calculations.

### B.      Statutory Sentencing Factors

#### 1.   Nature and Circumstances of the Offense

The nature and circumstances of the offense are detailed in the factual statement of the plea

agreement, which stated as follows:

> Beginning in 2012, the United States Drug Enforcement Administration (hereinafter DEA), assisted by the United States Internal Revenue Service (hereinafter IRS), the Missouri State Highway Patrol (hereinafter MSHP), the Springfield, Missouri, Police Department (hereinafter SPD), and the other affiliated law enforcement agencies, investigated a large scale methamphetamine distribution network in southwest Missouri involving several sources of supply both inside and outside of the State of Missouri.  The leaders of this distribution network in southwest Missouri were identified as Daniel and Kenna HARMON.  The HARMON Drug Trafficking Organization (hereinafter HARMON DTO) obtains pound amounts of methamphetamine from sources of supply in Kansas City, St. Louis, as well as from the State of Oklahoma, for distribution in the Springfield, Missouri, area.

> In December of 2013, Daniel HARMON was traffic stopped by law enforcement outside of St. Louis, Missouri.  During a search of his vehicle, officers discovered approximately 4 pounds of methamphetamine, $60,000 in U.S. currency, and a handgun.  Daniel HARMON was indicted in the United States District Court for the Eastern District of Missouri on April 9, 2014, with one count of possession of methamphetamine with intent to distribute, one count of being a felon in possession of a firearm, and a forfeiture allegation.  Daniel HARMON was arrested and detained.  On September 5, 2014, Daniel HARMON pleaded guilty to both counts and the forfeiture allegation.

> After Daniel HARMON's detention and incarceration, Kenna HARMON continued to lead the HARMON DTO in its distribution of methamphetamine.  Kenna HARMON directed the HARMON DTO to purchase large amounts of methamphetamine from various sources of supply, which included co-defendants Anthony J. VAN PELT and Kenneth FRIEND. Kenna HARMON obtained methamphetamine from her sources of supply and she would provide distributive amounts of methamphetamine to MILLER, and others.  In total, the HARMON DTO was responsible for the distribution of over 45 kilograms of

3

methamphetamine from June 1, 2013, through November 29, 2014, and MILLER was aware, or had reason to be aware, of this amount being distributed by the HARMON DTO.

Members of the Missouri State Highway Patrol (MSHP) and the DEA had information that Jonathan A. HEREDIA was engaged in the distribution of methamphetamine at his place of business, named Hot Shot Motors in Rogersville, Webster County, Missouri. Based upon this information, members of the DEA and the MSHP, utilizing a Confidential Informant (CI), conducted an undercover purchase of 4 grams of methamphetamine from HEREDIA on March 5, 2014. Based on the purchase of methamphetamine, the DEA and the MSHP obtained a Missouri state search warrant. The warrant was executed on March 5, 2014. Inside the business, officers discovered HEREDIA and MILLER. MILLER also worked at Hot Shot Motors. Inside the business, officers discovered approximately 75.59 grams of a mixture or substance containing methamphetamine which was contained in various plastic bags inside HEREDIA's desk in his office at the business; numerous smaller plastic bags commonly used for the redistribution of methamphetamine inside HEREDIA's desk; approximately 11 grams of marijuana found inside HEREDIA's desk and on the office floor of the business; two digital scales commonly used to weigh controlled substances found inside HEREDIA's desk; a .40 caliber Smith and Wesson handgun, serial number DWV4982, located under HEREDIA's desk; $48,757.00 in United States currency found inside HEREDIA's office, with some of the money found in HEREDIA's desk, some inside his pants pocket, and the remainder found inside his safe located in the office; and approximately 518 grams of a mixture or substance containing methamphetamine found inside a bathroom shower at the business.

HEREDIA was interviewed after the search and agreed to speak with police. HEREDIA denied knowledge of the presence of the methamphetamine inside the shower, but acknowledged that the methamphetamine inside his desk was his and that he distributed methamphetamine out of the business. HEREDIA stated that he obtained his methamphetamine from a Hispanic named "Billy." The buy money used by the CI was found on HEREDIA's person. HEREDIA claimed the remainder of the $48,000 was "proceeds" from his business.

HEREDIA, in a later interview on March 18, 2014, stated that the 518 grams of methamphetamine found in the shower came from MILLER, who had purchased it from Kenna HARMON earlier in the day. HEREDIA asserted that he did not know that the bag contained 518 grams of methamphetamine until the execution of the search warrant.
On April 4, 2014, an MSHP CI purchased approximately 88 grams of methamphetamine from MILLER at MILLER's residence located in Springfield, Missouri. Prior to the transaction at MILLER's residence, DEA agents observed a 2005 Mazda, registered to Joseph ALLEN, and commonly used by Kenna HARMON, located in the driveway of MILLER's residence.

On April 7, 2014, the DEA obtained a federal search warrant to search MILLER's residence in Springfield, Missouri. Prior to the execution of the search warrant, officers followed MILLER, who attempted to evade the surveillance by driving around his neighborhood. Agents then car stopped MILLER, and he was arrested for the April 4,

4

2014, distribution of methamphetamine. The search of MILLER's residence then began. Inside the residence, agents found approximately 569 grams of methamphetamine, 31 grams of cocaine base, 28.2 grams of heroin, 34 grams of unknown white pills, 63 grams of marijuana, and 48.7 grams of mushrooms. Officers also found a drug ledger type notebook, two digital scales, smoking pipes, other types of drug paraphernalia, cell phones, and $10,937 in United States currency. Also found in the residence was MILLER's roommate. On MILLER's roommate's person, the officers discovered an additional 28 grams of methamphetamine.

After the execution of the search warrant, MILLER agreed to be interviewed by law enforcement. During his interview, MILLER stated that his methamphetamine source of supply was Kenna HARMON. MILLER stated that he had met HARMON and her husband, Daniel HARMON, about one year prior to the execution of the search warrant. At first, MILLER obtained only ounce amounts of methamphetamine from Daniel HARMON, but over time, he obtained methamphetamine from both Kenna and Daniel. MILLER stated that Kenna and Daniel got methamphetamine from the same supplier, but that both had different customer bases. By the late summer of 2013, until January of 2014, MILLER received one to two pounds of methamphetamine every few days from Daniel HARMON. In January of 2014, Daniel and Kenna HARMON were involved in a vehicle pursuit near Cuba, Missouri. During the pursuit, Kenna HARMON exited the vehicle and fled on foot. HARMON was stopped with 4 pounds of methamphetamine and $60,000 in United States currency.

After Daniel HARMON's arrest, MILLER began to deal with Kenna. MILLER stated that he got one to two pounds of methamphetamine every two to three days from Kenna HARMON. MILLER stated that he last got two pounds of methamphetamine from Kenna HARMON on April 4, 2014. MILLER stated that he paid over $15,000 per pound for HARMON's methamphetamine, and MILLER believed that HARMON was being supplied by a source of supply out of Kansas City. The most methamphetamine that MILLER ever saw Kenna HARMON possess was 10 pounds. MILLER regularly saw HARMON with $60,000 to $70,000 in United States currency either at HARMON's residence, or at one of the hotels that HARMON used to meet her methamphetamine suppliers.

MILLER also admitted that he had brought the 518 grams of methamphetamine to Hot Shots Motor Company on March 5, 2014. MILLER admitted that this methamphetamine was also obtained from Kenna HARMON. MILLER stated that HARMON's brother, Joe ALLEN, was Kenna HARMON's "right hand man" and that he had delivered methamphetamine to MILLER for HARMON on several occasions. MILLER supplied methamphetamine to HEREDIA.

On February 9, 2015, MSHP officers conducted a traffic stop of a car driven by MILLER in Greene County, Missouri. During the stop, MSHP officers were able to conduct a search of MILLER's vehicle. The search revealed 146 grams of methamphetamine in six separate baggies, 31 grams of marijuana, and a glass pipe.

5

The defendant was involved with the Kenny Friend/Kenna Harmon Drug Trafficking Organization (FRIEND/HARMON DTO) which was a large-scale conspiracy to distribute methamphetamine throughout southwest Missouri in the years 2013-14. The defendant's role in this conspiracy was to distribute large amounts of methamphetamine that he received from the DTO to other persons. Miller was a mid-level distributor of the organization, similar to Jeffery Hatch and Cheryl Paluczak, and during the investigation law enforcement seized 1.2 kilograms of methamphetamine from the defendant. The defendant's actions helped fuel the growth of one of the largest methamphetamine distribution rings in southwest Missouri, and this conduct requires a serious punishment. A total sentence of no less than 120 months reflects the serious nature of this offense and the need for adequate punishment.

### 2. **History and Characteristics of the Defendant**

The defendant had 23 criminal history points and his criminal history category under the sentencing guidelines is a level VI. The defendant has three felony convictions for possession of methamphetamine, and one felony conviction for distribution of marijuana.

The PSR also indicates that the defendant has a substance use/abuse history involving alcohol, marijuana, cocaine, heroin and methamphetamine. The defendant began using illegal controlled substances at the age of 14. The defendant is 41 years old.

The government believes a total sentence of no less than 120 months would be a just punishment taking into account the history and characteristics of the defendant and would allow the defendant to obtain the drug treatment that he needs from the BOP.

### 3. **Need to Promote Respect for the Law**

Based on the defendant's history and actions, the Government would contend that a substantial sentence is necessary to promote respect for the law, both on the part of the defendant,

as well as on the part of the community as well.  In this case, the Government believes a sentence of no less than 120 months would promote this respect for the law.

### 4. <u>**Need to Afford Adequate Deterrence to Criminal Conduct**</u>

A sentence of no less than 120 months would provide a deterrent to this defendant and those who commit similar types of crimes.  While it is impossible to truly determine if others will be deterred from committing future crimes, a sentence of no less than 120 months will specifically deter this defendant from committing additional crimes during his period of incarceration.

### 5. <u>**Need to Protect the Public from Further Crimes of the Defendant**</u>

The defendant has shown that he is a danger to the community by his actions.  A sentence of no less than months will give the community peace and security from the defendant at least for the period of time he is incarcerated.

### 6. <u>**Need to Provide the Defendant with Education, Vocational Training, or Other Correctional Treatment**</u>

The Government would submit that this defendant would benefit from a program that allows him to obtain further education.  The defendant would likely would do well in obtaining further education.  The government believes that the defendant would benefit from vocational training and other educational opportunities, as this would assist in his ability to obtain employment after his period of incarceration.

As noted, the defendant has reported a long history of substance abuse.  The government believes that the defendant would benefit from the 500 hour substance abuse treatment program offered by the United States Bureau of Prisons, and would not object to the defendant's placement in the program.

## 7. **The Need to Avoid Unwarranted Sentencing Disparities**

The government has agreed with the defendant to recommend a sentence of no less than 120 months. Based upon the sentences given to other defendants, the Government believes that a sentence of no less than 120 months and no more than 146 months is proportionate. Co-defendant Brandon House received a sentence of 240 months. House had a base offense level of 35, with a criminal history category of VI, and was considered a mid-level dealer of methamphetamine in the conspiracy. Co-defendant Gregory Jones received a sentence of 180 months. Jones had a base offense level of 35, criminal history category of V and was a mid-level dealer of methamphetamine in the conspiracy. Co-defendant Jeffrey Gardner also was a mid-level dealer in the conspiracy, and he had a base offense level of 35, criminal history category of VI with 22 criminal history points. The Court sentenced Gardner to a sentence of 180 months. Co-defendant Joseph Allen also received a total sentence of 180 months, for the conspiracy, as well as for his possession of multiple firearms in furtherance of the conspiracy. Allen had a base offense level of 37, criminal history category of I. Jeffrey Hatch was sentenced to 144 months. Hatch also was a mid-level distributor who had a criminal history category of III, and his base offense level was 35, with a sentencing range was 240 to 260 months, coupled with a 60 month consecutive sentence under 18 U.S.C., Section 924(c). Cheryl Paluczuk received a sentence of 132 months for her role in the conspiracy. Paluczak had a base offense level of 35, and a criminal history category of IV. Paluczak received a sentence of 132 months.

Based upon the defendant's similarity to Hatch and Paluczak in this case, the Government believes a sentence of between 120 to 146 months is proportionate. The government believes that the defendant should receive a sentence not less than 120 months, but should not receive a sentence greater than 146 months. A sufficient period of incarceration is

8

necessary to punish the defendant of his actions.  A sentence of no less than 120 months and no more than 146 months would be an adequate punishment to accomplish this.

## IV.  CONCLUSION

Section 18 U.S.C. § 3553 requires this Court to impose a sentence that considers a variety of factors, including the advisory guideline range.  The Government respectfully requests that the defendant's role in the offense, behavior and history, the need to promote respect for the law, the need to protect the public from the defendant, and any other statutory sentencing factors be considered in reaching an appropriate sentence.  In conclusion, the Government respectfully requests this Court to impose a sentence of no less than 120 months for Count 1.  Such a sentence would be consistent with the circumstances of this case.

Respectfully submitted,

THOMAS M. LARSON
Acting United States Attorney


*/s/ Randall D. Eggert*_____
RANDALL D. EGGERT Mo Bar #39404
Assistant United States Attorney
Western District of Missouri
901 St. Louis Street, Suite 500
Springfield, Missouri  65806
(417)831-4406

## CERTIFICATE OF SERVICE

I hereby certify that on this the 23rd day of June, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case.

*/s/ Randall D. Eggert*
RANDALL D. EGGERT
